1    The Honorable Richard A. Jones

2

3

4

5

6

7    UNITED STATES DISTRICT COURT FOR THE
     WESTERN DISTRICT OF WASHINGTON
8    AT SEATTLE

9    UNITED STATES OF AMERICA,          NO. 2:21-cr-00218-RAJ

10                    Plaintiff,
                                        ORDER ON DEFENDANT'S MOTION
11        v.                            TO SUPPRESS EVIDENCE AND FOR
                                        *FRANKS* HEARING
12   JIMMY GENE MILLER, JR.,

13                    Defendant.

14

15                    **I.      INTRODUCTION**

16        THIS MATTER has come before the Court upon Defendant Jimmy Gene Miller's

17   Motion to Suppress Evidence and for a *Franks* hearing.  Dkt. 35.  Having considered the

18   motion, the government's response (Dkt. 53), defendant's reply (Dkt. 64), the

19   government's surreply (Dkt. 79), and the files and pleadings herein, the Court **DENIES**

20   the motion.  The parties are well aware of the details of the investigation and the Court

21   will refrain from detailing the full history and only reference the facts of the investigation

22   as necessary for this determination.

23                    **II.     DISCUSSION**

24        The defendant seeks a *Franks v. Delaware*, 438 U.S. 154 (1978) hearing and

25   suppression of all evidence contending that all evidence seized pursuant to multiple

26   search warrants executed on his residence and vehicles, and the fruits of the searches,

27   were illegally obtained.

28

ORDER - 1
*United States v. Miller, 2:21-cr-00218-RAJ*

Specifically, the defendant contends the following serve as the basis for the suppression of evidence and *Franks* hearing:

1.    That there was no probable cause for the issuance of the pen/trap warrant MJ21-497, 9/7/21.

2.    The October 6 search of the breezeway of the defendant's apartment was unlawful and the failure to disclose the results of this search to the magistrate judge in subsequent search warrants was improper.

3.    That the second pen-trap warrant MJ21-563, 10/20/21, was based on intentionally or recklessly proffered evidence.

4.    The warrant applications to conduct a canine sniff outside of Apartment W8, MJ21-564 and MJ21-579, were based on intentionally or recklessly proffered evidence.

5.    The warrant applications for the Kent apartment and person, MJ21-602, and the anticipatory warrant for Miller's vehicle space #31, MJ21-617, were based on intentionally or recklessly proffered evidence.

6.    The November seizure of the defendant and warrantless search of his vehicle was illegal.

In addition to the foregoing specific contentions, the defendant raises a myriad of issues that he believes supports the bases for his motions.  In sum, the defendant contends that absent these lies, other inconsistencies and omissions, warrants should not have issued.

Before undertaking ruling on the defendant's motion, the Court will address issues raised by the parties in the defendant's reply (Dkt. 64) and the government's surreply (Dkt 79).

In his reply, the defendant raises several factual contentions not raised in his suppression motion.  The government contends this is improper and asks this Court to refuse to accept such argument.  *United States ex rel. Giles v. Sardie*, 191 F. Supp. 2d

1117, 1127 (C.D. Cal. 2000).  The Court generally agrees that it is improper for a moving

party to raise issues never raised in his suppression motion.  The Court will, however,

consider them as the government has also advanced the declaration of FBI Special Agent

Shawna McCann, which the Court will also consider under the authority of

*Messerschmidt v. Miller*, 565 U.S. 535, 547 (2012) which authorizes extrinsic evidence in

circumstances as now before this Court.

> ### A.      GPS Warrant to Track Miller's Cell Phone, GPS Warrant/MJ21-497

The defendant contends the search warrant application for MJ21-497 failed to

state probable cause because affiant FBI Special Agent McCann relied almost exclusively

upon the  allegations of CS1 and CS2, whom he asserts provided uncorroborated

information which was used to support issuance of the warrant.

The information relied upon included CS1's contention that he saw Jimmy Miller

Jr., brandishing a firearm and that he was using phone number (206) 530-7878.  Dkt. 36,

MJ21-497, p. 7.  The information relied upon included CS2's statement that Jimmy

Miller Jr., was carrying a firearm and was assaulting and shooting at people.  Dkt. 36,

MJ21-497, p. 7.  CS2 also provided the same telephone number for Miller as CS1.  The

thrust of this challenge is that the basis of either CS1's or CS2's knowledge that Miller

possessed or brandished firearms is nowhere to be found in the affidavit.  In other words,

a challenge to the reliability of unsupported conclusions which should not support

probable cause.

The second component of the challenge is that it references an August 11, 2021,

police report regarding the recovery of Miller's stolen car.  The claimed inaccuracy is

that the report only references that Miller was the victim of the "theft of car parts" rather

than the theft of his car.  The claimed importance of this assertion is that the omission

that Miller's car had been stolen is material to subsequent warrant applications where

there is reference that Miller's use of rental vehicles was to evade law enforcement

detection.  Dkt. 35, at 5.

1    Other challenges to the warrant include the omission that Miller remained

2 employed full-time with a stable residence; that no information was provided to support

3 the reference to Miller previously being associated with the East Union Street Hustler

4 street gang; and that the representation that investigators had been unable to determine

5 Miller's residence and current vehicle(s) was false in that Miller's federal probation

6 officer already knew this information.

7    The government counters the defendant's attacks on the two confidential sources

8 by identifying their history and reliability.  According to the government, CS1 had told a

9 detective with the Seattle Police Department that he had seen Miller brandishing a

10 firearm and that his telephone number was (206) 530-7878.  CS1 was represented as a

11 paid informant with the Seattle Police Department who had been working with law

12 enforcement for more than five years and had not been closed for cause by any other law

13 enforcement agency.  His identity was known to law enforcement, and he had previously

14 provided credible and reliable information in the past on other investigations that led to

15 charges and seizures of narcotics and firearms.  The SPD detective had relayed this

16 information to the affiant (SA McCann).  Dkt. 53, at 3.

17    The government represents that CS2 had also provided information that Miller

18 was carrying a firearm and was assaulting and shooting at people.  CS2 provided the

19 same telephone number for Miller as provided by CS1.  According to the government,

20 CS2 was known to law enforcement, was paid as a Seattle Police Department informant,

21 and had provided credible and reliable information on other investigations.  Dkt. 53, at 4.

22    The government also asserts the information provided by the confidential sources

23 was not restricted.  Upon receipt of this information agents learned Miller had been the

24 victim of a vehicle prowl, and the police report documenting the same confirmed his

25 telephone number to be the same as provided by both of the confidential sources.

26    Agents also received information that Officer Huber provided information to SA

27 McCann that he was familiar with Miller from prior investigations and identified Miller

28 as a member of the East Union Street Hustler Gang.

ORDER - 4
*United States v. Miller, 2:21-cr-00218-RAJ*

According to the government, the information from the confidential sources, confirmation of Miller's telephone, and association with a street gang provided the basis for the investigation of Miller's involvement in firearms violations.  All of these facts were included in the application for the issuance of the search warrant.

The government additionally counters the defense claims regarding the absence in the search warrant application about the claimed lack of knowledge of SA McCann concerning Miller's residence and place of employment.  The defense claims about what was communicated to whom and when appears to be unsupported by any facts before this Court.  Nor is there any record in the chronological reports of the Probation Officer to support the defendant's supposition.

The Court finds the defendant's arguments on this probable cause challenge unpersuasive for several reasons.  First, the two informants had provided in the past credible and reliable information on other investigations to law enforcement officers. This is unrebutted.  Moreover, these informants each provided the same telephone number for the defendant that was confirmed by law enforcement agents.  There is no evidence presented to suggest the two informants knew each other or had communicated about the defendant's use of the telephone number they appear to have independently provided to law enforcement.  Nor is there any information to suggest that law enforcement officers exchanged any information between the respective confidential sources of information.

SA McCann also provided to the magistrate judge detailed criminal histories for both confidential sources.  Dkt. 36, MJ21-497, p. 7.

The warrant application also included Miller's gang association, prior convictions for firearms and drug trafficking crimes, and his admission to violating the terms of his supervised release.  These unrebutted statements combined with the agent's opinions adequately justified the issuance of the warrant.

It is patently obvious that the application did not reflect the basis for the knowledge, but when considered with the totality of information before the magistrate, it

was sufficient for a finding of probable cause.  Consequently, there is no basis to exclude or suppress the evidence derived from the issued warrant.  For these reasons, the defendant's motion on this warrant is denied.

The defendant also contends SA McCann "omitted material information" about CS2's criminal history.  Dkt. 64, at 11.  Specifically, the claim is that Agent McCann did not identify the extent of CS2's criminal history or that CS2 had pending identity theft charges at the time of the initial warrant application.

The application clearly indicates that CS2 had extensive criminal history with multiple convictions and detailed the specifics of some of the history.  While more detail could have been provided, there is no requirement that the applicant must detail the entirety of every drop of criminal wrongdoing of a cooperating witness.  Acknowledging more could have been provided, the defendant does not present sufficient facts that had such detail been provided, it would plausibly have changed the probable-cause determination.

In light of the foregoing finding, the record does not reflect that SA McCann recklessly or intentionally included any false material in the search warrant application. No *Franks* hearing is necessary or justified upon the record before this Court on this warrant.

## B.      GPS Renewal Warrant MJ21-563 and Canine Sniff Warrant MJ21-564

The defendant contends the renewal of the pen/trap warrant repeated the same "information and misinformation" from the original application claiming the defendant was "trafficking/distributing cocaine."  Dkt. 35, at 9.  In addition, the defense contends the observations of law enforcement fell short of probable cause.  The claims by the defendant argue that the "only alleged drug activity observed was from September 7 to October 21, with Miller visiting with multiple females at their residences" and the general observation about drug trafficker practices and Miller's contact with an alleged drug trafficker.

1    The government responds to the defendant's claims with several counterarguments
2    the Court finds persuasive.  These include that the affidavits contained information that
3    two confidential informants had reported to law enforcement that Miller was
4    trafficking/distributing cocaine; that Miller's behavior with respect to his vehicles such as
5    switching and airing out rental vehicles was consistent with someone seeking to hide
6    drug trafficking activity; and that Miller was traveling regularly to three or four different
7    residences and that this was indicative of someone visiting stash houses or distributing
8    drugs or proceeds.

9        The affidavit included statements about Miller's conduct that had been gained
10   from physical and electronic surveillance including his communication with a felon/gang
11   member D.T., Miller's driving of rental vehicles, engaging in behavior consistent with
12   attempting to conceal drug trafficking activity, and his driving to various destinations not
13   his own during the morning and early afternoon.

14        The totality of evidence presented is sufficient to establish probable cause.  While
15   each of these observations may be explained or challenged, that is not the standard for
16   assessing probable cause.  As stated in *United States v. Ayers,* 924 F.2d 1468, 1478 (9th
17   Cir. 1991), a reviewing court must decide solely whether, under the totality of the
18   circumstances, the issuing magistrate had a "substantial basis for concluding that the
19   affidavit in support of the warrant established probable cause."  In a doubtful case, which
20   this case is not, preference is to be given to upholding the validity of a search warrant.
21   *United States v. Calabrese,* 825 F.2d 1342, 1349 (9th Cir. 1987).  In short, the
22   defendant's challenge of these warrants falls short.

23   **C.    Magistrate Judge McCandlis' Authorization of Warrant to Search
24         Miller's Person and Kent Apartment**

25        Magistrate Judge McCandlis authorized search warrants for Miller's person and
26   Kent apartment.  Miller contends the affidavit lacked sufficient probable cause and
27   likewise challenges K9 Devon's positive alerts at Miller's door and vehicle as "fruit of
28   the poisonous tree."

ORDER - 7
*United States v. Miller, 2:21-cr-00218-RAJ*

The government refutes this challenge with citation to a host of facts that supported Magistrate Judge McCandlis' authorization for the issuance of the search warrants. In addition to information from the prior warrants, the agents had spoken with a third confidential source who stated that the felon/gang member D.T. had continued to be associated with gang members (the same D.T. Miller had previously been seen associating with), that Miller had engaged in activity on November 3 consistent with drug trafficking, that agents had not observed Miller at any legitimate place of employment or traveling in patterns indicative of employment, and the variety of rental vehicles Miller had been observed to be driving. While the interpretation of these facts can be challenged, they nonetheless established probable cause when considering them in light of the other statements tendered to Magistrate Judge McCandlis.

The defendant also challenges the November 3rd positive alerts by K9 Devon at the exterior door of Miller's apartment and vehicle he had been seen driving earlier that night. Specifically, he suggests that because this was the dog's first deployment, the dog alert was per se unreliable. Since the first deployment fact was not communicated in the affidavit, the defense argues SA McCann intentionally withheld this information from the Court.

The Court disagrees with the defendant. The mere fact that a drug detection canine is new to the force or has only recently been certified does not make the dog's sniffs constitutionally invalid. As long as the government can establish the dog's training and experience as a drug-detection dog, there is no need for further evidence of reliability. *United States v. Robinson,* 390 F.3d 853, 874 (6th Cir. 2004); *United States v. Kennedy*, 131 F.3d 1371, 1376-77 (10th Cir. 1997).

The affidavit submitted by SA McCann stated that the canine handler and K9 Devon were trained and qualified, and described the type of narcotics the K9 was trained to detect. There is no evidence that SA McCann attempted to withhold information from the Court regarding the K9's experience. The Court does not consider the after-the-fact explanations by the government and what they mistakenly failed to include in the final

warrant packet.  The information, while submitted in summary fashion, clearly referenced the facts the agent was aware of regarding the certification and qualifications of the K9. Since the K9 did produce a positive sniff alert, that was sufficient probable cause to search for drugs.  *United States v. Cedano-Arellano,* 332 F.3d 568, 573 (9th Cir. 2003).

The Court rejects the defense suggestion that the mere fact this was K9 Devon's first detection as inherently unreliable.  The Court is unaware of any formalized requirement that a drug dog's reliability beyond the statement that it has been trained and certified to detect drugs is required to be detailed in a search warrant affidavit.  The defense suggestion that a "rookie dog team" should be considered "unreliable" until it has several positive real-life deployments would create an untenable outcome.  This would create a presumption of unreliability without a factual basis to support the same.  It would also suggest that the first search of every "rookie dog team" would presumably be invalid because of the lack of experience in real time searches.

### D.     The Impala Search Warrant Application MJ21-622

The defendant repeats many of the arguments previously addressed by this Court to challenge this warrant.  These references include the challenges regarding the agents' claimed misstatements about Miller's employment and lifestyle and narcotics detection K9 (Cisco) alerts.  The defendant also contends the K9 was repeatedly influenced and cued throughout the entire time by the dog's handler, Detective Lazarou.  In addition, the defense proffered expert Falco Jiminez regarding what constitutes accepted drug dog training and deployment practices and standards.

In response, the government has indicated that some aspects of the deployment could cast doubt on the reliability of the dog sniff.  Dkt. 53, at 38.  For these reasons, the government does not rely upon the positive alert reported by Detective Lazarou when the Court is considering whether sufficient probable cause existed to search the Impala.  The Court accepts this concession and excises the actions of Detective Lazarou in its analysis and determination if probable cause existed independent of the dog sniff.

Excising the canine sniff facts from the search of the Impala does not change the outcome.  The balance of facts established probable cause to search the Impala.  The government makes this precise point.  Magistrate Judge Michele L. Peterson issued an anticipatory warrant based upon identical information without the dog sniff evidence.  This Court reaches the same conclusion and there was probable cause established to issue the warrant and conduct the search.

### E.    Search of the Rental Car

Miller takes issue with the search of the rental car.  That issue requires minimal analysis from the Court due to the long line of cases that affirm and reaffirm the automobile exception in conducting searches.  The bottom line is that even if this Court assumes there were defects in the Impala warrant, it is of little consequence because of the automobile exception to the Fourth Amendment requirement.  The officers were permitted to stop the defendant's vehicle to execute the search of his person.  The affidavit contained facts that demonstrate the officers had reason to believe the stopped vehicle contained contraband.  Under these circumstances, if officers have probable cause to think a lawfully stopped vehicle contains contraband or evidence, they are permitted to conduct a warrantless search of any part of the car where it could be.  *United States v. Korte,* 918 F.3d 750, 755 (9th Cir. 2019).

In light of the facts, probable cause to search existed to search the vehicle well before the canine sniff.  This is evidenced by the fact that Magistrate Judge Peterson had already issued the Anticipatory Vehicle Warrant before the dog sniff.

### F.    Miller's Remaining Fourth Amendment Claims
#### 1.    October 6, 2021 Search of Breezeway

The defendant contends that on October 6, 2021, without a search warrant, and at the direction of SA McCann, Auburn Officer Shaub directed his drug detection K9 Axel to conduct a sniff of a suspect's apartment door.  According to the defendant, the fact of this warrantless search was not disclosed to other judges who issued the subsequent

warrants.  The defense posits that the fact this search was not divulged to the other judges sheds light on the credibility of subsequent warrant applications.  Dkt. 35, at 9.  The defendant relies upon an out of circuit opinion, *United States v. Whitaker*, 820 F.3d 849 (7th Cir. 2016), to support his argument.  The Court begins this analysis observing that the government did not rely upon any results of that dog sniff, so there are no fruits from that sniff to suppress and this becomes a non-issue.

The Court declines to follow the defendant's request that this dog sniff affects the credibility of subsequent warrants for a variety of reason.  First, the extent of the dog sniff was in the breezeway/hallway of the apartment building.  A defendant has no reasonable expectation of privacy in the common areas of one's apartment building. *United States v. Nohara*, 3 F.3d 1239, 1241 (9th Cir. 1993).  "The hallway of an apartment building, as with the threshold of one's dwelling is a 'public' place for purposes of interpreting the Fourth Amendment."  *United States v. Calhoun,* 542 F.2d 1094, 1100 (9th Cir. 1976).

The limited extent of the dog sniff and the area in which it was undertaken did not give rise to a search restricted by the Fourth Amendment or Ninth Circuit precedent. More importantly, it would be improper for this Court to apply the exclusionary rule given that the investigators never relied upon the results of that warrantless K9 sniff in any search warrant affidavit.  In addition, not only did investigators not rely upon that sniff, but they also obtained a warrant for the subsequent K9 sniff.  Consequently, there was no illegal search to warrant any remedy from this Court.

In addition, the Court looks to the actual contentions of misconduct by the agent claiming she did not disclose the subject K9 sniff in subsequent search warrant applications.  There are no facts before this Court that SA McCann did not include this information in the affidavits to keep the magistrate judge in the dark.  These claims fit more under the category of surmise and speculation when compared to what is before this Court.  As proffered, it was the Assistant United States Attorney that directed the agent to not include this information, not the agent acting with ill intent. The record suggests her

conduct was more closely aligned with avoiding taint as opposed to an effort to mislead or recklessly engage in improper submission or omission of evidence.

### 2. Miller's Detention Pending Acquisition of an Arrest Warrant

The defense contends that Miller was detained for hours until an arrest warrant was obtained. The defense fails to reference the circumstances of the delay which was attributed to his having difficulty breathing which warranted a response from the fire department/EMS team. The search was delayed until this medical team could arrive.

In addition to the medical delay was the detainment of Miller for officer safety until the search of his Kent apartment could be concluded the same morning. These circumstances are compounded by the fact that after finding ammunition in the defendant's Kent apartment, the detention was converted to an arrest. Last, the Probation Office had obtained a warrant to arrest Miller for violating his supervised release conditions.

All of these factors clearly indicate that Miller's arrest and detention were not only lawful, but constitutional in light of the facts and circumstances.

### 3. Examination/Search of Miller's Cell Phones

The defense contends that during the stop on November 19, 2021, Miller was removed from the Impala and handcuffed. Miller claims the officers opened the front driver door, entered the car, removed his phones, examined them, placed them in a black bag, walked away with the phones, re-examined them at the hood of a patrol car, and then returned with the bag containing the phones and placed them on to the driver's seat. The defense argues all of this was done without the benefit of a search warrant.

The contentions offered by the government clearly indicate no search of the phones took place. It is undisputed the phones were removed from the vehicle. However, what has been presented does not constitute an illegal search. Rather, it appears at most that law enforcement officers removed the cell phones from the vehicle and placed them in a signal blocking evidence bag to prevent either cell phone from

being remotely erased before a search warrant could be obtained.  It appears that the officers also removed the phones from the bag to photograph them for purposes of describing the phones on the evidence log.  There is no evidence that any of the investigating agents or officers examined or attempted to search the contents of the phones.  Under these facts, there was no illegal search of the cell phones.

## G.     Entitlement to a *Franks* Hearing

The government contends this Court should deny the defendant's motion claiming, first, he has failed to make a substantial showing that the investigating agents intentionally or recklessly made false or misleading statements or omissions in support of the warrant; and second, that the defendant has failed to establish that any such statement or omission was material.

In *Franks v. Delaware,* the United States Supreme Court held that after a search warrant has been issued, a defendant is entitled to an evidentiary hearing -- a "*Franks* hearing" -- regarding the veracity of factual allegations in the search warrant affidavit if (1) the defendant makes a "substantial preliminary showing" that the affiant knowingly and intentionally or with reckless disregard for the truth included a false statement in the warrant affidavit, and (2) the allegedly false statement is necessary to the finding of probable cause.  438 U.S. 154, 155-156 (1978).  The test also applies to material omissions of fact.  *DeMassa v. Nunez,* 747 F.2d 1283, 1293 (9th Cir. 1984), *on reh'g,* 770 F.2d 1505 (1985).

At this juncture, Miller is not expected to show clear proof at the pleading stage, but rather he has the burden "to make a substantial showing that supports a finding of intent or recklessness."  *United States v. Gonzalez,* 412 F.3d 1102, 1111 (9th Cir. 2005)*, amended on denial of rehearing,* 437 F.3d 854.

The government summarizes the specifics of the agents' alleged actions that the defendant claims support his justification for a *Franks* hearing.  Dkt. 53, at 44-45.  The Court agrees with the government that the correct outcome is a denial of the motion.  The defendant's allegations of deliberate falsehood or recklessness appear to be premised

1   upon surmise, suspicion, and bare assertions of misconduct.  The defendant has failed to

2   show substantially or otherwise any intentional or reckless misconduct by SA McCann to

3   warrant a *Franks* hearing.  Not meeting the requirements as noted, the Court denies the

4   defendant's motion without a hearing.

5          In his reply brief, the defendant contends that the representation that Miller was

6   involved in a shooting on September 6, 2021, was proven to be untrue due to historical

7   cell site data provided by T-Mobile well before SA McCann sought the warrants for

8   Miller's apartment and Impala. Dkt. 64, at 9.

9          The government countered this contention with substantial and convincing

10  contrary evidence.  The Call Detail Records only provided the historical location data for

11  Miller's phone.  Based upon the record, these records did not provide the location of

12  Miller's phone, nor did they provide the location of Miller's phone in relation to the cell

13  towers.  These records, according to the government, did not identify the servicing towers

14  when Miller's phone sent a text message or was not in use.  Contrary to the defendant's

15  claim, the T-Mobile records provided on October 21 and November 16 did not contain

16  the data necessary to determine whether Miller's phone was located near the state

17  fairgrounds on September 6, 2021.

18         The T-Mobile data does not prove that the CS provided false information.  The

19  Court references and agrees with the government response that the historical data did not

20  show a particular phone near the fairground on September 6, nor does it prove that he

21  was not at the fairgrounds on that day.  Nor does it prove that Miller was not somehow

22  involved in the shooting.  All to conclude, there is no persuasive evidence tendered to this

23  Court that SA McCann misled any magistrate judge about the historical cell data to

24  warrant a *Franks* hearing.

25         The defendant additionally raises a myriad of contentions about various

26  representations in SA McCann's affidavits.  The Court will address each in turn.

27  ///

28  ///

ORDER - 14
*United States v. Miller, 2:21-cr-00218-RAJ*

### a. Information about Miller's Employment Security Records

The defendant contends that "it is clear someone in the FBI received Miller's Employment Security records by November 16, if not sooner." Dkt. 64, at 8. This contention fails for several reasons. The defendant has failed to meet the materiality and relevance component to challenge the probable cause determination. Moreover, Miller fails to establish that anyone in law enforcement confirmed the information contained in the records before November 19, 2021. More importantly, Miller fails to offer or proffer any evidence that the investigators deliberately failed to provide SA McCann with any analysis of or confirmation of the information in those records.

### b. Information About Miller's Employment at Capitol Hill Location

The thrust of this contention is that an officer at the scene of Miller's arrest "misinformed" SA McCann and provided "untrue" information about his interaction with a female standing in front of the residence. Critical evidence in this case is the bodycam video. Dkt. 64-3(BMV X6039B1BK). The government's representations of the interaction with the female and an unknown man appear to be consistent with the content of the video and description of statements by the officer. The characterization of her as "uncooperative" was not unreasonable. Dkt. 79, at 11. The defendant's assessment that the officer "misinformed" SA McCann is not supported by the evidence reflected in the video.

### c. Information Known to the Probation Office

The defendant suggests that law enforcement received information from the Probation Office about Miller and that SA McCann intentionally omitted that information from the affidavits. The government succinctly establishes this representation as untrue when considering the combination of the sworn declaration of Task Force Officer Huber and pointedly by the unredacted chronologies which illuminate that the Probation Office did not provide information about Miller's current employment, income, or residence to AUSA Lombardi or Officer Huber. Dkt. 53, at 5; Dkt. 53-3 ¶¶ 35-38; Dkt. 53-2.

1

                     **d.**       *Information Regarding K-9 Devon's Deployment History*

2           The defendant contends Detective Shaub provided misleading information in the

3 form of a "declaration suggesting Devon was reliable" despite never having been

4 deployed in the field before.  Dkt. 64, at 16, 22-24.  The record demonstrates the officer

5 outlined his own training as a canine handler and K9 Devon's training and certifications.

6 The defendant cites no controlling caselaw or persuasive evidence establishing that a lack

7 of prior deployments renders a canine unreliable or a deficiency that must be disclosed to

8 a reviewing court.  To the contrary the government has established that certification on its

9 own is enough to establish reliability.  Dkt. 53, at 35-36.

10                      **e.**       *Information Regarding Reliability of K9 Cisco Sniff*

11

12           This contention fails for lack of anything more than surmise on the defendant's

13 part.  Although the defendant contends that Detective Lazarou "knew" that the November

14 19 sniff of the Impala by K9 Cisco was unreliable, he provides no evidence to support his

15 claim that the detective knew yet failed to disclose that the alert was unreliable.

16           Moreover, Miller fails to provide any evidence to support the statement that the

17 "agents believed that without the K9 sniff there was no probable cause to search the

18 Impala."  Dkt. 64, at 23. What obviates this conclusion is that two days earlier,

19 Magistrate Judge Peterson had signed an anticipatory vehicle warrant based on the same

20 probable cause contained in the Impala warrant, minus the information about K9 Cisco's

21 positive alert.  The issuance of that warrant clarifies that the K9 sniff evidence was of

22 little significance to establishing probable cause to search.

23      **H.**     **Exclusionary Rule**

24           The government has advanced a variety of justifications to counter the defendant's

25 motion including the exclusionary rule, the inevitable discovery doctrine, and the *Leon*

26 good faith exception.  In light of the Court denying the defendant's motion and *Franks*

27 hearing request, the Court need not address these issues.

28 ///

ORDER - 16
*United States v. Miller, 2:21-cr-00218-RAJ*

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

### III.   CONCLUSION

For the foregoing reasons, the Defendant Jimmy Gene Miller's Motion to Suppress and for a *Franks* Hearing is **DENIED.**

DATED this 30th day of August 2022.

_____

The Honorable Richard A. Jones
United States District Judge

ORDER - 17
*United States v. Miller, 2:21-cr-00218-RAJ*